KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5681
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR MANUEL OROZCO-AGUIRRE,<br><br>Defendant. | Criminal Case No. 08CR0644-LAB<br><br>DATE: April 14, 2008<br>TIME: 2:00 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**<br><br>**1) COMPEL DISCOVERY;**<br>**2) DISMISS INDICTMENT;**<br>**3) REVEAL GRAND JURY TRANSCRIPTS;**<br>**4) SUPPRESS STATEMENTS;**<br>**5) SUPPRESS EVIDENCE; AND**<br>**6) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** |

COMES NOW, the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant U.S. Attorney, and hereby files its Response and Opposition to defendant's above-referenced motion, along with Government's Motion for Reciprocal Discovery. Said response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

//

## I.

## STATEMENT OF THE CASE

On March 5, 2008, a federal grand jury returned an indictment charging Defendant Victor Manuel Orozco-Aguirre ("AGUIRRE") with knowingly and intentionally possessing, with intent to distribute, 139 kilograms (308.20 pounds) of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

On March 6, 2008, the Defendant was arraigned on the Indictment and entered a plea of not guilty. The motion hearing is scheduled for April 14, 2008 at 2:00 p.m.

## II

## STATEMENT OF THE FACTS

### A. PRIMARY INSPECTION

On February 22, 2008, at approximately 11:30 p.m., United States Border Patrol (USBP) Agent T. Delgado was performing his official duties as a canine officer at the pre-primary area of the Highway 86 Checkpoint. At that time, USBP Agent T. Delgado observed a blue Freightliner tractor trailer with California license plate UP70041 approach the primary inspection area of the checkpoint. Aguirre was the sole occupant and driver of the vehicle.

Agent Delgado conducted a pre-primary inspection of the tractor trailer with his service issued canine. During this inspection, the canine alerted to the back of the trailer. USBP Agent D. Carney questioned Aguirre as to his citizenship. Aguirre told Agent Carney he was a Mexican citizen and presented a valid U.S. Visa. Agent Carney asked Aguirre to present his I-94 card, and Aguirre presented his bill of lading. Agent Carney noticed Aguirre's hands were shaking and he began fumbling with his wallet. 4 Agent Carney requested and was granted permission to search the truck and the trailer. Agent Carney referred Aguirre and the tractor trailer to secondary inspection.

### B. SECONDARY INSPECTION

At secondary inspection, as Aguirre exited the truck, USBP Agent Maldonado questioned him regarding his cargo. Aguirre stated that he was carrying empty beer bottles. Agent Maldonado noticed the trailer had a seal on the door. Without being prompted, Aguirre immediately pulled off the metal seal to the door of the trailer with his fingers. The metal security seal would normally need to be

removed with a tool. It appeared to Agent Maldonado that the seal had already been pulled off and then set back on the trailer to appear as if it had never been tampered with.

After opening the trailer, Agent Delgado observed two black duffle bags propped in the rear of the trailer along with a medium-size cardboard box and a white bundle sitting on top of the box. Aguirre immediately stated he didn't now how the objects got into the trailer. A search of the contents of the bags revealed 24 brick-like bundles. The bundles were wrapped in aluminum foil, packing tape, red jelly, laundry detergent, and cellophane. The bundles weighed a total of 139 kilograms (308.2 pounds).

The duffle bags were removed from the trailer and taken inside of the checkpoint for testing. Agent Delgado performed a test on one of the bundles which contained a green leafy substance. The substance tested positive for the properties of marijuana.

C. AGUIRRE'S POST-ARREST STATEMENTS

Drug Enforcement Administration Special Agent Jeff Butler advised Aguirre of his rights, per Miranda. Aguirre acknowledged his rights and agreed to answer questions without the presence of an attorney. Aguirre stated he picked up a trailer in Calexico, California on February 21, 2008. Aguirre stated that he did not inspect the seal on the trailer or complete his log book for his current trip. Aguirre had no explanation for why the number on the metal security seal did not match the number on the bill of lading, and why the metal security seal was easily removed.

D. TECS RECORD CHECK

A TECS lane record check on the truck and trailer revealed several recent crossings through the Calexico, California Port of Entry.

## III.

## ARGUMENT

A. DEFENDANT'S MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

The defendant has filed request for discovery and to preserve the evidence in this case. To simplify the response, the various items sought have been broken down into the following categories: (1) items to which the Government has no objection; and (2) items to which the defendant is not entitled.

**(1) Brady Material.** The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to Defendant when such evidence

is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(2) Any Proposed Rule 404(b) Evidence.** The Government has already provided Defendant with information regarding Defendant's known prior criminal offenses. The Government will disclose in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). To the extent possible, the Government will provide the Rule 404(b) evidence to Defendant within two weeks prior to trial. The

Government will also provide notice of all impeachment evidence by prior criminal convictions as required by Fed. R. Evid. 609.

**(3) Request for Preservation of Evidence.** The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, _ U.S._ , 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. RIVERA-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(4) Defendant's Statements.** The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require

disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3rd Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

**(5) Tangible Objects.** As previously discussed, the Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(6) Expert Witnesses.** The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This shall include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons for those opinions.

**(7) Witness Addresses.** The Government will provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. , 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992), citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)©." United States v. Yung, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980).

**(8) Jencks Act Material.** The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(9) Informants and Cooperating Witnesses.** At this time, the Government is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to

conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant somehow involved in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(10) Specific Request to View A-Files of Material Witnesses.** As previously discussed, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(11) Residual Request.** The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's residual discovery request.

## B. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

### 1. Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by United States District Judge Larry A. Burns on January 10, 2007. Defendant's Memorandum of Points and Authorities filed March 3, 2008 at 11-26 (hereafter "Memorandum").[1] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making the arguments concerning the two separate instructions, Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervisory powers

[2] Defendant supplies a partial transcript of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. See Exhibit A to Memorandum (hereafter "Exhibit A"). Defendant also supplies a partial transcript of the grand jury proceedings which records the voir dire of several potential witnesses. See Exhibit B to Memorandum (hereafter "Exhibit B").

over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Id. Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice – that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]" – a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. See Memorandum at 26 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment."). Concerning that kind of a contention, Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2/]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you

---

[3] In Isgro, the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

> can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

**2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

---

[4] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[4/]

In line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient. . . .'" Memorandum at 22. Defendant contends that this addition to the approved instruction "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." Id. Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when excused prospective grand jurors.

In concocting the theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Defendant contends that "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." Memorandum at 12. This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

---

[5] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e., disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[5/] 408 F.3d at 1204-06. This other instruction bestows discretion on the grand jury not to indict.[6/] In finding this instruction constitutional, the court stated in words that ring true here: "It is

---

[6] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

(continued...)

the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Exhibit A at 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

---

(...continued)
408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the supplemental transcript excerpts (see United States' Appendix filed on March 4, 2008) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

//

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden she has to bear. "Absent such prejudice – that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal is not warranted." Isgro, 974 F.2d at 1094.

3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
> . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Exhibit A at 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Exhibit A at 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Exhibit A at 20.[7/]

---

[8] Just prior to this instruction, Judge Burns had informed the grand jurors that:

(continued...)

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Exhibit A at 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Memorandum at 17. Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

---

(...continued)

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

> The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 26.[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[9/] (emphasis added)). See also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

---

[9] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[10] Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[10/] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[11/] Specifically, it appears he is aware of USAM Section 9-11.233, which states:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[12/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233." (Emphasis added.)[13/]

---

[11] He recalled those days when instructing the new grand jurors. Exhibit A at 12, 14-16, 17-18.

[12] The USAM is available on the World Wide Web at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

[13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the Internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

(continued...)

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[14/] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15/] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

---

(...continued)
USAM 9-5.001, ¶"E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[15] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

[16] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[16/] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

---

[17] The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

Moreover, unless Defendant can point to exculpatory evidence that the Government knew about and failed to present to the grand jury, the Court should not order production of the grand jury transcript of this case.

C. DEFENDANT'S MOTION TO REVEAL GRAND JURY TRANSCRIPTS

Noting that the United States is not required to do so, Defendant requests that the United States turn over grand jury transcripts in advance of trial. The United States will comply with 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2. The United States does not intend to call any witness that testified before the grand jury in its case-in-chief. Thus, this request is moot.

D. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

The evidence will show that at the time of his apprehension, Aguirre was properly advised of his Miranda Rights. Aguirre stated he understood those rights and waived them. The agent made no threats or promises to induce Aguirre to waive his rights. The evidence will show that the waiver was knowing and voluntary, and the statements were freely and voluntarily made.

E. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

1. The Detention At Primary and Secondary was not Pretextual

Aguirre argues that the government is using the Highway 86 checkpoint for general law enforcement purposes, i.e. to look for drugs. As a result, he contends further discovery regarding the use of the checkpoint to prove the search in this case was illegal. He also contends that he was impermissibly referred to secondary inspection, and the wait in secondary inspection was unreasonable. His arguments are without merit.

The burden is on the defendant to establish that the referral and detention were solely drug related and therefore pretextual. See United States v. Koshnevis, 979 F.2d 691, 694 (9th Cir. 1992); United States v. Barnett, 935 F.2d 178, 181-82 (9th Cir. 1991).

In this case, Border Patrol Agent Delgado and Carney referred the vehicle to secondary inspection because: (1) he suspected Aguirre may have been smuggling something due to Aguirre's nervous demeanor and the type of vehicle he was driving; (2) Aguirre's immigration status had been

questioned because when he was asked for his I-94 card he gave the agent a bill of lading; and, (3) his service canine had alerted to the trailer. Thus, the referral was for an immigration inspection.

At secondary inspection, Border Patrol Agent Carney asked for, and received, consent to run a canine on the truck. The dog alerted and then the agent did a physical inspection of the vehicle. The time it took from the initial contact at primary to the dog alert at secondary was minimal. Marijuana indicative of drug distribution was located throughout the truck.

Based on the facts, there clearly was an immigration purpose in the brief detentions at primary and secondary inspection. However, Aguirre contends that there was no real immigration purpose and that all of the preceding is pretextual because the Border patrol was performing drug interdiction activities at the checkpoint, prior to any inspection or even a suggestion that there was a need for an immigration inspection.

This, however, does not make the Border Patrol's actions pretextual and non-immigration related since one's citizenship status is irrelevant to the immigration purpose of investigating alien smuggling. Approximately twenty percent of the alien smugglers at the checkpoint are non-Hispanic. United States v. Wilson, 7 F.3d 828, 833 n.3 (9th Cir.), cert. denied, U.S. , 114 S. Ct. 2151 (1994). At the checkpoint, the nervousness and unusual behavior that often leads a Border Patrol agent to refer a vehicle to secondary inspection or to detain someone could signify smuggling aliens, or drugs, or both.

The stop was valid and justified under United States v. Martinez-Fuerte, 428 U.S. 543 (1976). Furthermore, there is no affirmative evidence that the referral was pretextual.

2. The Checkpoint Search Did Not Exceed the Scope of Consent

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno,___ U.S.___ , 111 S. Ct. 1801, 1803-04 (1991). In Jimeno, the Supreme Court found it was reasonable for the police officer to believe the defendant's consent to search his car included searching a closed paper bag on the

floorboard of the car. Id. See also United States v. Pace, 893 F.2d 1103 (9th Cir. 1990) (consent to pat-down for drugs reasonably included removal of bulky objects).

In United States v. Mines, 883 F.2d 801 (9th Cir.), cert. denied, 493 U.S. 997 (1989), this Court further commented on the defendant's failure to withdraw or limit his consent as he watched the officer conduct his search. Id. at 804-805. "[The defendant]'s failure to [object or limit the consent] indicates he consented to the entire search and everything it revealed." Id. at 805.

In this case, Agent Carney asked Aguirre if he would permit the agent to examine the trunk. Agent carney's request was a general request to look at the trailer. When Agent Carney opened the trailer, he found some packages in the trailer area that were clearly out of place.

3. There was Probable Cause for the Search

Even if this Court finds the search of the trailer exceeded the scope of consent, the district court found that, based on the totality of the facts and circumstances, Agent Carney also had probable cause to search the trailer.

An officer's determination of probable cause is reviewed under the same standard as a magistrate's. United States v. Tarazon, 989 F.2d 1045 (9th Cir.), cert. denied, ___ U.S.___, 114 S. Ct. 155 (1993). Probable cause is a fluid concept that can be determined only by reference to the " totality of the circumstances." United States v. Seybold, 726 F.2d 502, 504 (9th Cir. 1984). All that is needed is a "practical, common sense" showing that there is a "fair probability" that contraband or evidence will be found in a particular place. Id. Probable cause does not demand any showing that such a belief be correct or more likely true than false. United States v. Murray, 751 F.2d 1528, 1532 (9th Cir.), cert. denied, 474 U.S. 979 (1985).

Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search that location. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). An officer's experience may be considered in determining probable cause. United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir. 1985). "Conduct innocent in the eyes of the untrained may carry entirely different messages to the experienced or trained observer." Id. See also United

States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983), cert. denied, 465 U.S. 1103 (1984) (agent's opinion, based upon eleven years as a narcotics agent, that evidence of defendant's drug dealing would be found at defendant's residence was an "important factor" in determining whether probable cause

existed for the search warrant for defendant's house).

In United States v. Koshnevis, 979 F.2d 691 (9th Cir. 1992), the district court found probable cause existed for the agent's search of the defendant's car trunk when the defendant came through an immigration checkpoint. He was nervous and unwilling to make eye contact with the agent. He made inconsistent statements about ownership of the car at secondary, and his statements about his possession of a weapon and the trunk key proved to be false. The Ninth Circuit affirmed holding the search of the trunk was proper.

In this case, like the Koshnevis case, Aguirre came through an immigration checkpoint and appeared nervous. When Agent Carney asked Aguirre for his I-94 card, Aguirre gave him the bill of lading for his cargo. When Agent Carney asked Aguirre again for the I-94, he began fumbling for his wallet. When Agent Carney referred Aguirre to secondary inspection, after Aguirre had consented to a search of the trailer, the agent looked into the trailer. Immediately, Agent Maldonado noticed that the packages.

4. The Detention was Valid Under United States v. Taylor

Aguirre argues that once Agent Maldonado’s visual examination of the trailer area revealed no concealed individuals, his search should have ceased. This contention has no merit. This brief detention after Agent Maldonado's immigration purpose had ended is legal under United States v. Taylor, 934 F.2d 218 (9th Cir. 1991), cert. denied,___U.S.___, 112 S. Ct. 171 (1992).

In the Taylor case, Taylor was stopped driving a vehicle at primary inspection at the San Clemente Border Patrol Checkpoint. Taylor was referred to secondary inspection because the Border Patrol Agent "thought the nervous behavior of the occupants could mean that they were concealing undocumented aliens or perhaps narcotics." Id. at 219. Taylor was detained at secondary inspection three to four minutes while the Border Patrol Agent obtained consent to search the trunk and then

searched the trunk. Once the trunk was opened and no illegal aliens were found, the immigration inspection was completed. Id.

However, rather than letting Taylor go at this point, the Border Patrol Agent continued to detain him for a brief further period of time (about one minute), while the Border Patrol Agent investigated for drug smuggling by running a detector dog around the outside of the vehicle. Id. at 219. On appeal, the court found that the intrusion from the further detention was minimal and that it was based on minimal suspicion (i.e., Taylor's nervousness). Id. at 220-221. The court then held that the brief further detention to investigate drug smuggling was reasonable under the Fourth Amendment. Id. See also United States v. Preciado-Robles, 964 F.2d 882, 884 (9th Cir. 1992) ("brief detention following valid immigration questioning is permitted so long as the government can prove `an articulable suspicion or a minimal showing of suspicion'"), and United States v. Wilson, 7 F.3d 828, 833 n.3 (9th Cir.), cert. denied, U.S. , 114 S. Ct. 2151 (1994). ("a brief detention at a permanent checkpoint beyond the time required for immigration purposes is legal if predicated on an articulable suspicion or a minimal showing of suspicion of criminal activity").

This detention in the instant case was based on minimal suspicion and did not violate the Fourth Amendment.

F. DEFENDANT’S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS

The Government does not oppose Defendant’s request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing. The Government requests leave to file additional response and opposition papers in the event the defendant is granted leave to file additional motions.

G. GOVERNMENT’S MOTION FOR RECIPROCAL DISCOVERY

1. Rule 16(b)

The defendant has invoked Federal Rule of Criminal Procedure 16 in his motion for discovery. The Government has voluntarily complied with the requirements of Federal Rule of Criminal Procedure 16(a). Thus, the 16(b) provision of that rule, pertinent portions of which are cited below is applicable:

The Government hereby requests the defendant permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody, or control of the defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of the defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant intends to call as a witness. The Government also requests that the Court make such orders as it deems necessary under Rules 16(d)(1) and (2) to insure that the Government receives the discovery to which it is entitled.

2. Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except the defendant. The new rule thus provides for the reciprocal production of Jencks statements. The Government hereby requests that the defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes, and reports.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant's motions should be denied.

DATED: April 7, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/ Randy K. Jones
RANDY K. JONES
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: randy.jones2@usdoj.gov

KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. VICTOR MANUEL OROZCO-AGUIRRE, Defendant. | ) | Case No. 08CR0644-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions Together with Statement of Facts and Memorandum of Points and Authorities, and Government's Motion for Reciprocal Discovery on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Steven F. Hubachek E-mail: Steven_Hubachek@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 7, 2008

s/ Randy K. Jones
RANDY K. JONES