KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VICTOR MANUEL OROZCO-AGUIRRE,<br>Defendant. | Criminal Case No. 08cr0644-LAB<br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT'S MOTION TO RECONSIDER DEFENDANT'S DISCOVERY REQUESTS TOGETHER WITH GOVERNMENT'S SUPPLEMENTAL RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its Motion to Reconsider the Court's Order Granting Defendant's Discovery Requests together with Government's Supplemental Response and Opposition to Defendant's Motion to Suppress. This motion is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

//

//

//

I

STATEMENT OF THE CASE

A. DEFENDANT'S DISCOVERY MOTION

Defendant filed motions to compel discovery, dismiss the indictment, reveal grand jury transcripts, suppress statements, suppress evidence, and for leave to file additional motions on March 28, 2008. In his discovery motion, Defendant made several specific requests, including: (1) any written, recorded, videotaped, etc., Border patrol policy, procedure, and practice regarding the search for drugs or other contraband at the Highway 86 checkpoint, or immigration checkpoints in general; (2) the policy of undertaking pre-primary narcotics detector dog analysis; (3)the number of searches and arrest at the Highway 86 checkpoint over the past two years, along with the reasons for the searches and any charges leveled upon arrest; and (4) the names of the person(s) responsible for training and implementing Border Patrol policy regarding searches for contraband at the Highway 86 checkpoint. (Def.'s Discovery Mot. 29.) On April 7, 2008, the Government filed a response in opposition to Defendant's motions and a motion for reciprocal discovery.

The Court held a motions hearing on April 14, 2008. At the motions hearing, the Court ordered the Government to provide the discovery requested by Defendant. This motion for reconsideration follows, along with the Government's supplemental response and opposition to Defendant's motion to suppress evidence.

II

POINTS AND AUTHORITIES

A. DEFENDANT IS NOT ENTITLED TO THE PRODUCTION OF STATISTICS OR BORDER PATROL POLICIES REGARDING THE HIGHWAY 86 CHECKPOINT

Documents must be disclosed to the defense if their production is required by (1) Federal Rule of Criminal Procedure 16, (2) the Jencks Act (18 U.S.C. § 3500), or (3) pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), or their progeny. Absent grounding in the Federal Rules of Criminal Procedure, the Jencks Act, or Brady, Defendant has no right to discovery, let alone to propound what amounts to "document requests," akin to civil discovery. None of these authorities require production of Border Patrol's policies or statistics.

1. Rule 16 and Armstrong Do Not Compel Discovery in This Case

Under Rule 16 of the Federal Rules of Criminal Procedure, documents are discoverable only if (1) "the item is material to preparing the defense;" (2) the government intends to use the item in its case-in-chief at trial;" or (3) "the item was obtained from or belongs to the defendant."

In United States. v. Armstrong, 517 U.S. 456 (1996), the Supreme Court granted certiorari to determine the appropriate standard for a selective-prosecution claim. Armstrong contended that he was entitled to materials related to prosecution policies under Fed. R. Crim. P. 16(a)(1)(C),[1/] which provided in pertinent part:

> Upon request of the defendant the govermnt shall permit the defendant to inspect . . . books, papers, documents, data, photographs, [or] tangible objects . . ., which are within the possession . . . of the government, *and which are material to the preparation of the defendant's defense.*

Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added).

Armstrong argued that the documents that discussed the Government's prosecution strategy for crack cocaine cases were "material" to the selective-prosecution claim, and that any claim that "results in a nonconviction" if successful is a "defense" under Rule 16. Armstrong, 517 U.S. at 461-62. The Supreme Court responded to this claim as follows: "we reject this argument, because we conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." Id. The Court went on to state that the term "defense" is not a "sword," but a "shield" that forms the basis for an argument in response to the prosecution's case-in-chief. Id. The Armstrong Court ultimately held that Rule 16(a)(1)(C) [now Rule 16(a)(1)(E)] authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case-in-chief, but not to the preparation of selective-prosecution claims. Id. at 463.

The Supreme Court's decision in Armstrong is dispositive of the discovery issue in this case. First, the information sought by Defendant is not "material to [his] defense." In particular, Defendant has put forth no basis on which the categories of documents may theoretically assist him in a suppression motion, thereby resulting in a "nonconviction." The Supreme Court specifically rejected this very argument by holding that documents material to "nonconviction" are *not* included in Rule 16

---

[1/] Rule 16(a)(1)(C) is now Rule 16(a)(1)(E)(i).

*unless* they respond to the Government's case-in-chief.[2/] In sum, the statistics, policies, and other information sought by Defendant do not pertain to the Government's case-in-chief. This is especially so here where Defendant is ostensibly seeking discovery related to a legal issue, the suppression of evidence, which is not relevant at trial.

Second, the information sought by Defendant, regardless of what it reveals, is irrelevant to the fundamental question at issue – whether Defendant committed the crime charged. The Court in Armstrong concluded that Rule 16 provides for discovery of materials that the Government intends to use during its case-in-chief and to those documents that are "material to the defense," i.e., helpful to negating the Government's case-in-chief. This conclusion, the Court noted, is supported the "perceptible symmetry between documents 'material to the preparation of the defendant's defense,' and, in the very next phrase, documents 'intended for use by the government as evidence in chief at trial.'" Id. Here, the fact that the information Defendant seeks would have no bearing on his guilt or innocence dictates that it will not be used in the Government's case-in-chief, nor would it be "material to [his] defense" or to Defendant's rebuttal of evidence presented in the Government's case-in-chief.

Several cases are consistent with the Court's decision in Armstrong. In United States v. Chon, 210 F.3d 990 (9th Cir. 2000), a case analogous to this one, one of the issues on appeal was the district court's denial of a motion for discovery of all materials pertinent to whether the Navy Criminal Investigative Service (NCIS) targeted civilians. In deciding the issue, the Ninth Circuit first discussed Armstrong as follows: "In . . . Armstrong . . . the Supreme Court considered the parameters of Fed. R. Crim. P. 16(a)(1)(C) and ruled that defendants are entitled to the discovery of only those materials that are relevant *to the defendant's response to the Government's case in chief*." Id. at 995 (emphasis added). The Ninth Circuit then held that, under Armstrong, the appellants were only entitled to the discovery of those materials relevant to the charges, such that the district court did not err in its ruling. Id.

Likewise, in United States v. Anthony-Haines, 00-1690-R (Rhoades Order attached hereto as Exh. A), a case before United States District Court Judge John S. Rhoades from the Southern District

---

[2/] However, if Brady material, such information would still need to be provided for the suppression hearing. See United States v. Gamez-Orduno, 235 F.3d 453, 461-62 (9th Cir. 2000).

of California, the defendant sought some of the very same information sought by Defendant in this case about the very same Border Patrol checkpoint. Specifically, the defendant in Anthony-Haines sought from the Government the ratio of drug arrests to immigration-related arrests at permanent immigration checkpoints, including the Highway 78 checkpoint where the defendant in that case was arrested. The defendant sought this information to support his theory at a pretrial suppression motion that the Government had transformed permanent immigration checkpoints into general law enforcement checkpoints.

In rejecting the defendant's request, Judge Rhoades noted that such superfluous information did not pertain to the issue at hand – whether the agents had sufficient factual support to justify detaining the defendant. (See Exh. A at 10-11.) The court found that the defendant must show that the discovery sought is "material to the preparation of [his] defense." (Id. at 11 (citing Fed. R. Crim. P. 16(a)(1)(C); United States v. Khan, 35 F.3d 426, 431 (9th Cir. 1994).)

While Judge Rhoades's order and its affirmance by the Ninth Circuit is, of course, not binding on this Court, the reasoning of his order is persuasive, not only because of the nearly identical situations presented between the two cases, but also because it comports fully with the Supreme Court's decision in Armstrong. First, to date, Defendant has yet to produce a cognizable legal basis for the information sought. In Anthony-Haines, the court rejected the defendant's claim even though the defendant at least argued that the discovery sought was relevant to his claim that the Highway 78 checkpoint had been transformed into a general law enforcement checkpoint. Here, Defendant offers the same theory of relevance.

Second, as Judge Rhoades recognized in Anthony-Haines, the information sought be Defendant is not relevant to the legality of his detention. It is well-settled that in order to refer someone from primary to secondary at an internal Border Patrol checkpoint for a *non*-immigration related violation, the agents must have an objective "individualized suspicion of wrongdoing." United States v. Ellis, 330 F.3d 677 (5th Cir. 2003). The Supreme Court has held that reasonable suspicion includes "a *particularized* and *objective* basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (emphasis added). Thus, agents at an internal checkpoint must be able to articulate *particularized* and *objective* facts that serve as the basis for an individual's non-

immigration related referral primary to secondary. This standard, then, renders statistics or information related to other individuals irrelevant to the legality of Defendant's stop and referral.

Of course, Defendant is free to challenge the facts supporting the agents' referral from primary to secondary inspection. However, because the legality of such referral turns on whether the agents had particularized suspicion of criminal activity related to Defendant, information regarding the referrals of others, or other information about the checkpoint in general, is irrelevant.[3/] Based on Armstrong and Chon, Rule 16 does not apply to the pretrial suppression materials sought in this case because "defense" refers to the Government's case-in-chief. As such, Defendant is not entitled to the requested discovery under Rule 16.

Nor does United States v. Martinez-Fuerte, 428 U.S. 543 (1976) the case cited by Defendant in his discovery motion, (Def.'s Mot. at 2), do anything to alter this analysis. While it is true that statistics were furnished in some fashion for that case, the holding of the case does not depend on the sort of information sought by Defendant. Finally, that case does not support Defendant's contention here. Indeed, that case cuts against producing this information because it tends to show the issues Defendant seeks to raise have been fully litigated and decided – that is, if anything, it tends to show issue preclusion. Thus, Martinez-Fuerte upheld the validity of internal Border Patrol checkpoints within the Southern District of California. The Supreme Court in Martinez-Fuerte, upheld the validity of internal Border Patrol checkpoints. The Supreme Court, held that vehicle stops for brief questioning of occupants at the San Clemente checkpoint did not violate the Fourth Amendment. Martinez-Fuerte, 428 U.S. at 562. Accordingly, not only does Martinez-Fuerte stand for the proposition that the Government must disclose statistics and other information regarding Border Patrol checkpoints, but it also affirmed the validity of such checkpoints.

2. Brady and Giglio Do Not Compel Discovery

---

[3/] For this same reason, United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir. 2003), is inapplicable. In Cedano-Arellano, the Ninth Circuit, without citing any authority, held that various records relating to a drug detector dog were discoverable for pretrial suppression motions under Rule 16. 332 F.3d at 571. However, this issue is controlled by the Supreme Court's decision in Armstrong, and to the extent they conflict, Armstrong controls. Furthermore, the present case is distinguishable from Cedano-Arellano because, unlike the drug detector dog, the Government in this case is not relying on any of the requested statistics as the basis for the reasonable suspicion referral from primary to secondary or for the probable cause to make the arrest. Again, such statistics are irrelevant to Defendant's arrest.

Although the circuit courts are in disagreement, the Ninth Circuit has held that Brady obligations apply at suppression hearings. United States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000). It is well settled that the prosecution must disclose "evidence favorable to an accused . . . where the evidence is material." Brady v. Maryland, 373 U.S. 83, 87 (1963). While such evidence includes evidence which affects credibility, Giglio v. United States, 405 U.S. 150, 154 (1972), materiality under Brady and Giglio is not met simply because the evidence is "possibly useful to the defense." Brady, 373 U.S. at 87. Rather, evidence is material "only if there is a reasonable probability that the result of the proceeding [will be] different" if the evidence is disclosed to the defense. United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" and does not require proof by a preponderance of the evidence "that the outcome would have been different." Bailey v. Rae, 339 F.3d 1107, 1115-16 (9th Cir. 2003) (internal quotation marks omitted); see also Gamez-Orduno, 235 F.3d 453, 461-62 (holding that information that a defendant was at a location as an invitee, thus serving to disprove the Government's trespass-based standing argument, was Brady material for suppression hearing). Alternatively stated, "the question is not whether the defendant would more likely than not [receive] a different verdict with the evidence, but whether in its absence he [will receive] a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995).

Moreover, the Government does not have to create Brady materials, such as written witness statements, where none exist. United States v. Marashi, 913 F.2d 724, 734 (9th Cir. 1990); United States v. Bernard, 625 F.2d 854 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980). Likewise, the Government cannot be forced "to secure evidence, not already in its possession, for use in the impeachment of its own witness. This is not required under Brady or [Rule 16]." United States v. Old Chief, 121 F.3d 448, 450 (9th Cir. 1997) (citing United States v. Dominguez-Villa, 954 F.2d 562, 566 (9th Cir. 1992) (quoting United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991)).

Here, no matter the result of the requested information, it is irrelevant in determining whether there was a Fourth Amendment violation, much less the guilt or innocence of Defendant. For instance, with regard to referrals – assuming such statistics are kept, which they are not – whether the agents

working that day had made over 1,000 referrals or had made only one, what they did in another situation has no bearing on whether there was a legal justification for Defendant's detention and arrest.

Moreover, disclosure of Border Patrol policies and statistics is not appropriate after balancing Defendant's rights against the Government's interests. For example, in United States v. Gil, 58 F.3d 1414, 1421 (9th Cir. 1995), the Ninth Circuit upheld the district court's refusal to release the exact location of a warehouse that was under investigation, although the defense sought the information for cross-examination purposes. The court held that the protective order was warranted because the "sealed record demonstrates that disclosure would provide no exculpatory information and could compromise ongoing investigations involving the warehouse. The district court found that 'the specific identity of that warehouse is of less materiality . . . whereas . . . the potential harm of disclosure of this material appears to be great.'" Id. at 1421. As discussed more fully below, disclosure of much of this information would potentially compromise law enforcement sensitive policies and procedures, as well as the efforts of the Border Patrol to prevent illegal activities. Since the requested information has no apparent exculpatory value, the Court should deny Defendant's requests for discovery under the principles of Brady and its progeny.

3. The Jencks Act Does Not Compel Discovery

Under the Jencks Act, Government witness statements and reports are protected from discovery until after the witness has completed his or her direct examination during the Government's case. 18 U.S.C. § 3500(b). Here, none of the requested information regarding the statistics or policies related to the Highway 86 Checkpoint are statements or reports made by any potential Government witnesses. Thus, none of the material is discoverable under the Jencks Act.

4. Defendant's Request Is an Unsubstantiated Fishing Expedition that Imposes an Undue Burden on the Government and Calls for the Disclosure of Potentially Law Enforcement Sensitive Information

Defendant has yet to file anything with the Court, or put forth any basis to counsel that articulates any legal theory that supports the requested discovery. Under Rule 16, Defendant must do this before he is entitled to any discovery. The Advisory Committee Notes to Rule 16 state:

> While specific designation is not required of the defendant, the burden is placed on him to make a showing of materiality to the preparation of his defense and that his request is reasonable. The requirement of reasonableness will permit the court to define and limit the scope of the government's obligation to search its files while meeting the legitimate

> needs of the defendant. The court is also authorized to limit discovery to portions of items sought.

Fed. R. Crim. P. 16 advisory committee's note (b)(1). To date, Defendant has not offered any theory or basis to demonstrate that the sought-after information regarding the Highway 86 Checkpoint is material to the preparation of his defense. Defendant's requests therefore amount to nothing more than an fishing expedition. Such an attempt has no basis in Rule 16 or the case law governing discovery. The Ninth Circuit has held that where no evidence exists to suggest that material is discoverable under Brady, the district court properly denied such a "fishing expedition." United States v. Spagnuolo, 549 F.2d 705, 713 (9th Cir. 1977) (affirming district court's denial of the defendant's request for FBI investigative files where the defendant did not offer any evidence that the investigation was tainted); see also United States v. Abonce-Barrera, 257 F.3d 959, 970 (9th Cir. 2001) (denying a defendant's request, in part, because the defendant did not provide any justification for his discovery request other than to state that it might be useful). Defendant has requested such a broad array of non-germane information related to the Highway 78 Checkpoint – but in no way related to Defendant's arrest – that it could only be called a "fishing expedition." Such attempts, without more, are not in accord with Rule 16 or the relevant case law governing criminal discovery.

Preliminary inquiries with the Border Patrol regarding this type of information has revealed that much of it does not exist or is not kept as part of their standard procedures. Requiring the United States Border Patrol to assemble statistics and other data that they do not regularly keep, not only falls outside the purview of Rule 16 and the other common law rules of discovery, but imposes upon them an unreasonable burden that detracts from their law enforcement mission. A reasonableness rule attaches to Rule 16 that requires that "a demand for documents must not be unduly burdensome to the Government . . . ." United States v. Marshall, 532 F.2d 1279 (9th Cir. 1976) (holding that district court acted within its discretion in denying defendant's request for discovery related to arrests and reports of officers involved in that particular case because it would impose an unduly burdensome request on the prosecution). Additionally, statistics such as the population of the surrounding area are readily accessible in the public domain. Surely, Defendant has equal access to Census Bureau statistics, and to require the Government to conduct superfluous investigation on his behalf goes well beyond what is reasonable under Rule 16.

Finally, much of the information sought by Defendant impinges upon law enforcement sensitive information, the disclosure of which could jeopardize the Border Patrol's ability to effectively carry out its law enforcement duties. See 6 C.F.R. 5.48(a)(7) (disclosure of information prohibited where it would adversely affect the Department of Homeland Security in performance of its mission and duties). For instance, Defendant requests the policy of undertaking pre-primary narcotics detector dog analysis. Setting aside that such information is completely irrelevant, the disclosure of such information would alert Defendant and possibly others to the information necessary to avoid law enforcement action at the Highway 86 Checkpoint. The same could be said for other information requested by Defendant as well, such as the policies and procedures related to the Checkpoint and its operation. Accordingly, the discovery of the requested information has no legal basis, and it especially should not be compelled because of the threat to the disclosure of law enforcement sensitive information.

B. THE CHECKPOINT IS NOT BEING IMPERMISSIBLY USED FOR GENERAL LAW ENFORCEMENT PURPOSES THEREFORE DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED

Defendant argues that the Highway 86 Border Patrol Checkpoint is being used impermissibly as a "general interest in crime control" checkpoint of the sort ruled impermissible in City of Indianapolis v. Edmund, 531 U.S. 32 (2000). In so arguing, Defendant ignores decades of Ninth Circuit precedent affirming the validity of Border Patrol Checkpoints, and relies heavily on Judge Kozinski's ***dissent*** in United States v. Soyland, 3 F.3d 1312 (9th Cir. 1993)-an opinion Defendant repeatedly and erroneously claims is a concurrence, not the dissent that it clearly is.

It has long been acknowledged that Border Patrol Checkpoints are primarily immigration checkpoints that have the secondary effect of frequent narcotics interdiction. In United States v. Soto-Camacho, 411 F.3d 408 (9th Cir. 1995), Soto-Camacho was pulled over at a temporary Border Patrol checkpoint operating up to ten days each month along Interstate 8 (the Jacumba checkpoint)). As noted in Soto-Camacho, this checkpoint is actually put into operation in part based on intelligence about the movement of drugs across the border, a fact that does not vitiate the legal legitimacy of the checkpoint. Soto-Camacho was referred to secondary because traffic was backing up, and Soto-Camacho was unable to answer questions about his citizenship. At secondary, Soto-Camacho consented to a search of his vehicle, and Border Patrol agents thereafter found 35 kilograms of cocaine underneath the hood.

Soto-Camacho appealed his conviction on several bases-including the same checkpoint arguments Defendant makes in the instant case. "Soto analogizes an immigration checkpoint to an administrative search, arguing that because a search into general criminal activity oversteps the bounds of an administrative search, the bounds of an immigration stop are likewise exceeded when the checkpoint blossoms into a full-blown tool in the war on drugs." Soto-Camacho at 411. As with Defendant in the instant case, "Soto also relies on Judge Kozinki's dissenting opinion in United States v. Soyland, 3 F.3d 1312, 1315-19 (9th Cir. 1993)" Id. The Ninth Circuit denied each of Soto-Camacho's claims in turn. As in Soto-Camacho, Defendant in this case erroneously claims that once a Defendant's immigration status has been ascertained, thus ends the immigration inspection. To the contrary, as in the instant case, an immigration inspection may include an inspection of a vehicle, as the checkpoints are also properly set up to check for alien smuggling activity. "In any event, agents at both primary and secondary inspection testified that Soto's behavior was curious, and "[a] lack of certainty as to the reason for nervous behavior or the nature of suspected contraband does not amount to pretext." Soto-Camcho at 412, quoting United States v. Wilson, 7 F.3d 828, 834 (9th Cir. 1993). Similarly, Defendant's behavior in this case was odd. Defendant's hands were shaking, and he didn't know whose car he was driving. Surely, this would raise a question in anyone's mind about whether or not Defendant had aliens, drugs, or some type of contraband in his vehicle. Defendant's referral to secondary was absolutely proper.

Defendant's reliance on Judge Kozinki's dissenting Soyland opinion is not an appropriate basis for suppressing evidence in this case. As pointed out in Soto-Camacho, the argument that once an agent conducting an administrative search starts looking for drugs, the search becomes improper is an argument that has been rejected by the Ninth Circuit: "We have, however, held to the contrary in the similar context of Coast Guard inspections at sea." Soto-Camacho at 412 citing to United States v. Watson, 678 F.3d 765, 769 (9th Cir. 1982) (stop of a vessel in an area identified as a high narcotics-trafficking area was proper because there was an independent administrative justification for the stop, and the scope of the stop did not exceed what was proper under the administrative purpose). Similarly, in the instant case, there was a legitimate administrative justification for the stop (am immigration inspection), and the scope of the stop did not exceed what was proper under the administrative purpose

(the search of the vehicle was a search with the potential to reveal aliens, not just the 21 packages of cocaine that were ultimately found).

Rather than Judge Kozinski's dissenting opinion, this Court should be instructed by the majority opinion in Soyland. There, the Ninth Circuit held that "[R]easonable suspicion is not necessary [for a Border Patrol agent to refer a vehicle and its occupants to secondary], [the agent] properly referred the vehicle [to secondary] whether or not she suspected an immigration violation." Soyland at 1314. In Soyland, the Court cited to a lack of objective evidence that the reason for the referral to secondary was some sort of pretext for a special incentive to uncover a narcotics violation, and refused to engage in speculation that it may have been some sort of pretext. As in Soyland, Defendant's referral to secondary was made appropriately for further immigration purposes. Defendant has presented no objective evidence to the contrary; therefore, his motion to suppress must be denied.

IV

CONCLUSION

Based on the foregoing reasons, the Government respectfully moves this Court to reconsider its order granting Defendant's discovery requests and deny it, and to deny Defendant's Motion to Suppress.

DATED: May 28, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

S/Randy K. Jones
RANDY K. JONES
Assistant U.S. Attorney