**STEVEN F. HUBACHEK**
California Bar No. 147703
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Steven_Hubachek@fd.org

Attorneys for Mr. Orozco-Aguirre

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR MANUEL OROZCO-AGUIRRE,<br><br>Defendant. | Case No. 08CR0644-LAB<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

On February 22, 2008, Mr. Orozco Aguirre drove a blue Freightliner tractor trailer to the Highway 86 checkpoint at 11:30 p.m. Border Patrol Agent Timothy Delgado was using a narcotics detector dog to examine vehicles in the primary inspection area. His dog purportedly alerted to the rear of the tractor trailer. Delgado informed the primary inspector, Border Patrol Agent Carney, of the dog's alert. Carney claims to have sought and received Mr. Orozco Aguirre's consent to search the "entire vehicle and trailer." Mr. Orozco Aguirre was then sent to secondary inspection.

In secondary inspection, Agent Delgado again examined the vehicle with his dog, which purportedly alerted to the rear of the trailer a second time. Border Patrol Agent Maldonado was then directed to interrogate Mr. Orozco Aguirre. Maldonado questioned Mr. Orozco Aguirre regarding his cargo, and he responded that he was carrying empty beer bottles. According to Delgado, during Maldonado's questioning,

Mr. Orozco Aguirre removed a seal on the trailer's door, "[w]ithout being prompted." Opening the rear door revealed two large duffel bags. Mr. Orozco Aguirre stated that he did not know how they got there. The duffel bags contained marijuana.

DEA Special Agents Jeff Butler and Joanne Camacho interrogated Mr. Orosco Aguirre at approximately 3:40 a.m. Agent Camacho read a *Miranda* warning from a DEA form, a DEA 13a. The government has not produced the form 13a, nor has it provided any electronic or other record of the interrogation other than a report prepared by Agent Camacho. Mr. Orozco Aguirre supposedly agreed to answer questions. He made incriminating statements, although he did deny knowledge of the marijuana in the trailer.

## II.

## <u>THIS COURT SHOULD EXCLUDE THE PROPOSED VALUE TESTIMONY</u>

### A. <u>Any Testimony Asserting that Mr. Orozco Aguirre Must Have Possessed Knowledge of the Marijuana in the Trailer Because of its Supposed Value Violates Fed. R. Evid. 704 and Must be Excluded.</u>

The government intends to call D.E.A. Special Agent Barbara Hopkins to testify as a "drug value expert." Fed. R. Evid. 704 provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Ninth Circuit case law does not limit this rule to psychiatric witnesses; rather, it applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. <u>See</u> <u>United States v. Morales</u>,108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); <u>United States v. Webb</u>, 115 F.3d 722 (9th Cir. 1997) (holding it impermissible under Fed. R. Evid. 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.).

Any proposed expert who would opine -- directly or indirectly -- that the individual driving the tractor trailer must have known that the trailer contained marijuana testifies as to the defendant's mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to

//

bolster speculation on that individual's alleged knowledge. This testimony is expressly forbidden by Fed. R. Evid. 704. Accordingly, an order in limine must be granted excluding this testimony.

**B. Rule 403 Prohibits Street Value Testimony in Any Event.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial. There is absolutely no evidence that Mr. Orozco Aguirre is involved in street level trafficking nor is there evidence that he is involved with street level traffickers. The marijuana seized from the trailer was not packaged for retail distribution. The only possible purpose for admission of retail figures is to inflate the value of the marijuana, an exercise that exacerbates prejudice to Mr. Orozco Aguirre without adding any probative value to speak of.

**C. The Evidence of Value In Mexico Is Irrelevant.**

The government has suggested it wishes to offer evidence of value of marijuana in Mexicali, Mexico. The evidence is utterly irrelevant. Mr. Orozco Aguirre is charged with possessing marijuana in the United States, not with importing it. Moreover, there is no evidence he had anything to do with importing it. Value in Mexicali is irrelevant.

## III.

## THE COURT SHOULD EXCLUDE EVIDENCE OF "NERVOUSNESS" BECAUSE IT LACKS PROBATIVE VALUE, IS OVERLY PREJUDICIAL AND LACKS PROPER FOUNDATION.

**A. Such Testimony Should Be Precluded Under Federal Rule of Evidence 403:Testimony That Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

Discovery produced by the government contains broad assertions of nervousness on the part of Mr. Orozco Aguirre when he interacted with law enforcement. Federal Rule of Evidence 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (*en banc*) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall

v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous"error because -- "we have long been skeptical of such lay testimony"); United States v. Burks, 547 F.2d 968, 970 (6th Cir.1976) (stating that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98 S.Ct. 2141 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness's "direct knowledge of the defendant is brief and superficial.").[1]

In reversing a trial court's decision, the Tenth Circuit in Fernandez expressly notes, that: "[t]he lower court's heavy reliance on nervousness as an important factor establishing reasonable suspicion is even more troublesome given the complete lack of evidence in the record that [the police officer] had any prior knowledge of Fernandez . . . ." 18 F.3d at 879.

These cases demonstrate that the judiciary, in general, and this Circuit, specifically, place little to no weight upon nervousness in making particular fact-based rulings under the lesser burdens of proof than the beyond a reasonable doubt standard applicable at trial. *See, e.g.,* United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic stop -- even . . . extreme nervousness . . . in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity . . . ."). For example, in Chavez-Valenzuela, Wald and Fernandez nervousness was considered to be of little to no probative value in a probable cause/reasonable suspicion context where evidentiary standards are relaxed and where there is no need to consider the prejudicial impact of such evidence. *Id.;* Wald, 216 F.3d at 1227; Fernandez, 18 F.3d at 879.

The reasoning underlying the minimal significance accorded to "nervousness," is that courts recognize that "nervousness" has both guilty and innocent explanations because people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See, e.g., Chavez-Valenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike"); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers

[1] In bothGall and Smith, mental state was the defense, and it was deemed error to have lay witnesses without prior knowledge of the defendant opine that he appeared "not nervous," Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540. Similarly, here, where a distinct mental state knowledge, is the determinative issue, permitting witnesses without expertise and with no prior knowledge of Mr. Orozco Aguirre to testify to the converse, that he was nervous, is equally erroneous.

stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); accord Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); United States v. Wood, 106 F.3d 942, 947 (10th Cir. 1997) ("It is certainly not uncommon for most citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990) ("Nervousness, however, is 'a normal reaction to circumstances which one does not understand. In the absence of facts which suggest that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge");[2] United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir.1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990)("[n]ervousness is entirely consistent with innocent behavior, especially at an airport where a traveler may be anticipating a long-awaited rendezvous with friends or family"); United States v. Andrews, 600 F.2d 563, 566, n. 4 (6th Cir.1979) (noting inconsistent rationales taken by government in explaining nervousness).

In determining what can properly be considered in making reasonable suspicion/probable cause determinations, it is improper for district courts to rely upon factors which lead to a "heads I win, tails you lose" result for the prosecution. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1447 (9th Cir. 1994) (noting that point with respect to a driver's avoidance of eye contact with law enforcement the government argues that whether the driver made eye contact or avoided it both are signs of guilt); see also United States v. Lopez, 564 F.2d 710 (5th Cir. 1977)(where a factor and its opposite can both be used to justify a stop, the court should not give weight to either factor.). Nervousness is precisely such a factor as recognized in Andrews, 600 F.2d at 566 n. 4, where it discussed the fact that the government argues in some cases that "nervousness" indicates guilty knowledge while in others that its absence indicates the guilty knowledge of the calm and collected criminal. Since it is inappropriate for courts to consider such a factor in a mere probable cause calculus, concomitantly, a jury should not consider it at a far more important event, such as

---

[2] In Diaz-Carreon, the Fifth Circuit held that the "nervousness" was linked to consciousness of guilt but only because there, "before being told that agents had discovered marijuana in the pickup truck, Diaz-Carreon volunteered, 'If the truck is loaded, I didn't know about it.'" 915 F.2d at 954 (emphasis in original). Here, no such link between any amorphous "nervous" behavior and consciousness of guilt exists.

a trial[3]. Indeed, we expect our judges to be able to put aside undue prejudice when the law recognizes that jurors cannot do the same.

It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that an individual was "nervous" and equate nervous behavior with suspicious behavior. See, e.g., United States v. Gutierrez, 995 F.2d 169, 172 (9th Cir.1993) (testimony of law enforcement officers " 'often carries an aura of special reliability and trustworthiness' ") (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir.1987)). It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence of law enforcement, is ambiguous. For these reasons, evidence that someone was "nervous" should fall in the same category as evidence that an individual remained silent when confronted with law enforcement accusation. That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to Federal Rule of Evidence 403. United States v. Hale, 422 U.S. 171 (1975).

In Hale, 422 U.S. 171, the Supreme Court held that evidence permitting an inference of silence lacks probative value and is potentially too prejudicial to be admitted at trial from an evidentiary, not a constitutional, standpoint. Id. The prosecution cross-examined Hale about the fact that, at arrest, he had not told the police the exculpatory version of events to which he testified at trial. Id. at 174. The Supreme Court characterized this as silence evidence and stated that: "[i]n most circumstances, silence is so ambiguous that it is of little probative force." Id. at 176. "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted." Id. at 180.

Similarly, here, just as with silence evidence, the import of the testimony is ambiguous while the danger of unfair prejudice is substantial. The Supreme Court recently recognized in Mitchell v. United

---

[3] In the suppression context, courts are precluded from considering certain factors and as a matter of law, cannot rely upon them in finding probable cause or reasonable suspicion, such as race or ethnicity, United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir.2000) (en banc). Because of its limited probative value and the equivalent "guilty" and "innocent," explanation, courts indicate that "nervousness"also, should be accorded little to no consideration. While a factor such as race is not permitted to be the subject of testimony indicating guilty knowledge at a trial for other reasons, one such reason, i.e, that it has no relevance for purposes of ascertaining guilty knowledge, applies equally to nervousness. Just as race would not be a permissible subject of testimony at trial, neither should testimony about nervousness be admitted.

States, 526 U.S. 314, 327 (1999), with respect to silence evidence, even those "who should be better advised" are inclined to assume guilt when they learn that someone has remained silent. Here, just as there, jurors (who probably are not among the "better advised"), upon hearing from a law enforcement agents that Mr. Orozco Aguirre was "nervous," will be "inclined to assume guilt" as opposed to assuming the equally applicable innocent explanation. Thus, any slight probative value which could exist is insufficient to justify its admission. All told, any proposed testimony that Mr. Orozco Aguirre displayed signs of nervousness is irrelevant to the issue at hand and should be excluded under Federal Rule of Evidence 403 as being substantially more prejudicial than probative.

**B. Admission of Nervousness Testimony Violates Federal Rule of Evidence 701**

Finally, such evidence should be excluded if it is couched, as it is this case, in terms of a law enforcement witness' personal opinion about Mr. Orozco Aguirre's behavior, i.e., "he was nervous." The agent's personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and upon a very limited observation opportunity, violates Fed. R. Evid. 701. Rule 701 provides that a lay witness can only testify to opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. In Gonzalez-Rivera v. INS, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." Id. at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." Id. Likewise the testimony in the instant case that Mr. Orozco Aguirre is "nervous" is nothing more than a subjective judgment based upon no prior knowledge of him and, similarly, should not be considered by the jury.

//

//

//

**IV.**

**THIS COURT SHOULD EXCLUDE OPINION TESTIMONY BY AGENT MALDONADO AS TO THE CONDITION OF THE SEAL ON THE TRAILER**

Border Patrol Agent Maldonado took control of Mr. Orozco Aguirre in secondary inspection and was present when Mr. Orozco Aguirre broke the seal on the trailer door to enable the agents to search the trailer. The discovery contains an assertion attributed to Agent Maldonado that "[i]t appeared as if the seal had already been pulled off and then set back on to appear as if it had never been tampered with." No basis for this opinion is provided. Such baseless speculation should be excluded based upon Gonzalez-Rivera, 22 F.3d at 1447, and Rule 403.

**V.**

**THIS COURT SHOULD PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE**

**A. Rule 404(b) Evidence**

Federal Rule of Evidence 404(b) reads in pertinent part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial , or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). Thus, the rule requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. FED. R. EVID. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Proper notice requires that "[t]he Government . . . carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice. United States v. Morales-Quinones, 812 F.2d 604, 612 (9th Cir. 1987). Moreover, "the rule mandates that the government provide notice even if the government intends to introduce the evidence for "impeachment or for *possible* rebuttal." Vega, 188 F.3d at 1154 (emphasis in original).

Mr. Orozco Aguirre timely requested notice of proposed 404(b) evidence in his original motion to compel discovery filed March 28, 2008. To date, defense counsel has not received 404(b) notice of any sort from the government. Thus, Mr. Orozco Aguirre would ask the Court to preclude introduction of any evidence under Rule 404(b).

**B. Rule 609 Evidence**

Rule 609 provides in pertinent part that:

> For the purpose of attacking the credibility of a witness, [ ] evidence that an accused has been convicted of such a crime [punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused... and [ ] evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

FED. R. EVID. 609. Mr. Orozco Aguirre requested, in his motions filed March 28, 2008, that he be provided with his "rap sheet." No potentially impeaching convictions have been produced. Thus, should Mr. Orozco Aguirre choose to take the stand in his own defense, the government is precluded from attacking his credibility with prior convictions.

## VI.

## THE GOVERNMENT AND ITS WITNESSES SHOULD BE PRECLUDED FROM VOUCHING

Impermissible vouching must not be allowed during the Government's case-in-chief or during the Government's closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony" United States v. Weatherspoon, 410 F.3d 1142, 1146 (9th Cir. 2005) (citing United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993)).

The Supreme Court has held:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.*

Berger v. United States, 295 U.S. 78 at 88-89 (1935).

Similarly, the Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury . . . ." Weatherspoon, 410 F.3d at 1149. In Weatherspoon the Ninth Circuit went on to explain:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

Id. (citing United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994); and United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984)).

It is also impermissible for Government agents to vouch for themselves or each other. In United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur through the testimony of a government agent because the jury might easily identify the agent's position with the integrity of the United States. In fact, the Court noted that when that happens, vouching occurs in a "very powerful form." Id. Because the undersigned defense counsel has witnessed vouching both by prosecutors and by agents, Mr. Orozco Aguirre files this motion in advance of trial and asks that the government be forbidden from engaging in vouching in this case.

## VII.

## THIS COURT SHOULD COMPEL PRODUCTION OF THE GRAND JURY TRANSCRIPTS

The Court should make the grand jury transcripts available when the defense can show a particularized need. There is a particularized need in this case if a witness who testified before the grand jury will also testify at the trial of Mr. Orozco Aguirre. The government must produce a transcript of a witness's testimony before the grand jury following the direct examination of the witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for a recess in the proceedings for defense counsel to examine the statement pursuant to Federal Rule of Criminal Procedure 26.2(d).

//

Additionally, Mr. Orozco Aguirre moves for the production of grand jury transcripts, even if the grand jury witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that witness likely testified based upon information provided by other agents. The government has thus adopted the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See FED. R. EVID. 801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party to make a statement concerning the subject matter," see FED. R. EVID. 801(d)(2)(C), and constitutes "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," see FED. R. EVID. 801(d)(2)(D).

Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this court should conduct an *in camera* review of the grand jury testimony and order the transcript produced if it contains any testimony that might be Brady material or otherwise subject to production as explained above.

## VIII.

## THIS COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the government must prove to convict Mr. Orozco Aguirre. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[4]

---

[4]Mr. Orozco Aguirre is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies as well.

**IX.**

**MR. OROZCO AGUIRRE'S COUNSEL SHOULD HAVE THE OPPORTUNITY TO VOIR DIRE THE JURY**

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Criminal Procedure 24(a), Mr. Orozco Aguirre requests that his defense counsel have the opportunity to personally voir dire the prospective jury members. Individual voir dire assists defense counsel in providing effective assistance of counsel, helps assure that Mr. Orozco Aguirre has an impartial and qualified jury, and assists Mr. Orozco Aguirre in the intelligent exercise of peremptory challenges. See Rosales-Lopez v. United States, 451 U.S. 182, 187 (1981) (holding that "lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts"); Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir. 1998) (stating that "voir dire ought to be adequate to assure an impartial jury, by enabling the parties intelligently to exercise their challenges"); Darbin v. Nourse, 664 F.2d 1109, 1113 (9th Cir. 1981) ("[A] voir dire examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause." (footnote omitted)). Accordingly, this Court should allow defense counsel the opportunity to voir dire the prospective jury.

The Court should bear in mind that this case presents issues that are somewhat out of the norm. Mr. Orozco Aguirre is a tractor trailer driver, and he was performing his duties at the time of his arrest. He works for a company based in Mexico, but drives in the United States. As a result, his company is in direct competition with American trucking concerns, competition that may be considered unwelcome in some circles. Free trade issues continue to be controversial, and have figured in the primary campaigns for the presidency. Such issues are likely to remain controversial. Potential jurors with strong views on such issues may be poorly situated fairly to evaluate this case.

**X.**

**THE COURT SHOULD EXCLUDE THE MARIJUANA FROM THE COURTROOM**

The government may intend to present to the jury at trial the narcotics found in the trailer pulled by Mr. Orozco Aguirre. This visual display of a large amount of narcotics, even if relevant, is unduly

prejudicial to Mr. Orozco Aguirre. See FED. R. EVID. 403. The narcotics' presence is needless, cumulative, irrelevant, and stirs the emotions of the jury. Accordingly, it is unduly prejudicial to Mr. Orozco Aguirre and should be excluded. See FED. R. EVID. 401, 402 and 403.

**XI.**

**THIS COURT SHOULD PRECLUDE TECS HISTORY**

In order to admit TECS evidence against Mr. Orozco Aguirre, the government must lay a proper foundation under Federal Rule of Criminal Procedure Rule 16, Rules 404(b) and 702, the hearsay rules and the Confrontation Clause of the Sixth Amendment. Mr. Orozco Aguirre's position is that, in either the government's case-in-chief or in rebuttal, TECS evidence is inadmissible because: 1) it is Rule 404(b) evidence for which proper notice has not been given; 2) it is undisclosed expert testimony; 3) there is no hearsay exception on which the government can rely; and 4) the government cannot demonstrate the reliability of the TECS system. See United States v. Orozco, 590 F.2d 789, 792-93 (9th Cir. 1979) (to admit TECS documents under Rule 803(8), the TECS system's reliability must be demonstrated).[5]

//

//

//

---

[5]The defense contends that Orozco is wrong and this Court should not follow it. Even the panel decision recognizes that it conflicts with the plain language of Rule 803(6), see id. 590 F.2d at 792 ("noting that Rule 803(8) provides that its scope "exclud[es], however in criminal cases matters observed by police officers and other law enforcement personnel . . . ." and noting that "the customs inspector is one of the 'law enforcement personnel' included in rule 803(8)"). Government reports, which these are, are inadmissible under the public records exception. Fed. R. Evid. 803(8)(c), Advisory Comm. Note ("they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case"); see also United States v. Oates, 560 F.2d 45 (2d Cir. 1977) (cited in the Fed. R. Evid. commentary expressly discusses the Rules 803(6) and 803(8) interplay and finds government reports inadmissible under both).

In addition, the inadmissibility of these documents under Rule 803(8)(c) cannot be cured by offering them pursuant to Rule 803(6). Rule 803(6) does not, by its terms, "apply to [investigations made pursuant to authority granted by law and the] findings of agencies and offices of the executive branch," United States v. Jones, 29 F.3d 1549 (11th Cir. 1994); as does Rule 803(8)(c). It is "inappropriate" to rely upon the business records exception when the language of Rule 803(8)(c) is clearly applicable. United States v. Sims, 617 F.2d 1371, 1377 (9th Cir. 1980); Alexander, The Hearsay Exception for Public Records in Federal Criminal Trials, 47 Alb. L. Rev. 699, 716-17 (1983).

**A. TECS Testimony Is Rule 404(b) Evidence For Which Proper Notice Has Not Been Given.**

The Ninth Circuit recognizes that a defendant's prior border crossings are considered prior act evidence, and are thus subject to Rule 404(b) analysis. United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999) ("evidence of Vega's prior border crossings and bank deposits is "other acts" evidence subject to the provisions of Rule 404(b)"). In Vega, the Court noted that "[a]s an initial matter, we note that this rule applies to all 'other acts,' not just bad acts. Thus, despite the fact that there is nothing intrinsically improper about Vega's prior border crossings . . . they are nonetheless subject to 404(b)." Id.

Since the prosecutor here has not indicated that he intends to introduce any Rule 404(b) evidence, he should be bound by his lack of notice. If he now wishes to introduce this as some sort of Rule 404(b) evidence in his case, he must establish the link to Mr. Orozco Aguirre and the relevance to his theory of prosecution, as well as satisfy the strictures of Rule 404(b).

**B. TECS Testimony is Undisclosed Expert Testimony**

In this case, any TECS evidence would also constitute undisclosed expert testimony. Even though the government witness through which the government would seek to admit TECS evidence would not be rendering an "opinion," this does not remove this testimony from the realm of "expert testimony." The law provides to the contrary. According to Rule 702, the assumption that "experts testify only in the form of opinions . . . is logically unfounded." See FED. R. CRIM. P. 702 advisory committee's note. Rule 702 similarly provides that expert testimony can be based on "specialized knowledge," and cases indicate that the amendments to Rules 701 and 702 were made so as to prevent litigants from avoiding the expert witness disclosure requirements by labeling individuals as fact or laywitnesses and not soliciting "opinion" testimony. See In re Matter of the Complaint Illusions Holdings, Inc., 189 F.R.D. 316 (S.D.N.Y.1999). The Complaint Illusions case involved a negligence claim surrounding a scuba diving accident. Defendants listed two witnesses who knew nothing about the facts and circumstances of the case but purported to know much about scuba diving. Plaintiff argued that their testimony was expert testimony and sought to exclude it. Even though the testimony was factually based and the witnesses would merely describe things related to scuba diving, the court held that it was expert testimony because it was based upon the specialized knowledge related to scuba diving, testified to by individuals who otherwise had no connection to the case. Id.

Similarly, any testimony by a Customs Officer that his or her training equipped him or her to render an opinion on what the TECS information signified would constitute undisclosed expert testimony, the reliability of which has never been litigated, under Federal Rule of Criminal Procedure 16 and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

## XII.

## THIS COURT SHOULD EXCLUDE THE INDICTMENT FROM THE JURY ROOM

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," in the Ninth Circuit Manual of Model Jury Instructions, the Committee on Model Jury Instructions strongly recommends that the indictment not be sent into the jury room during deliberations. The commentary observes that neither the Federal Rules of Criminal Procedure nor case law requires sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Orozco Aguirre urges this Court to follow the Committee's guidance. The language in the instant indictment intentionally mirrors the language of the charged statutes. Accordingly, jurors could be improperly persuaded by the similarities between the indictment allegations and the elements of the crime. Because the indictment is not evidence, but could potentially be mistaken for such, this document should not be permitted into the jury room during deliberations.[6]

## XIII.

## THIS COURT SHOULD ORDER PRODUCTION OF ANY "SUPPLEMENTAL REPORTS"

Mr. Orozco Aguirre requests disclosure of any "supplemental reports" generated in this case. These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements. Mr. Orozco Aguirre believes that such a report is discoverable under Brady and Rule 16. Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the reports become producible under Jencks. See, e.g, FED. R. CRIM. P. 26.2(d). If the government contends that any

//

[6]Should the Court allow a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-52 (9th Cir. 1989).

"supplemental report" generated in this case is not discoverable, Mr. Orozco Aguirre requests that the Court view such a report *in camera.*

**XIV.**

**QUESTIONS CONTAINING GUILT-ASSUMING HYPOTHETICALS ARE IMPERMISSIBLE**

It is well-established law in this Circuit that a prosecutor's questioning of character witnesses by the use of guilt-assuming hypotheticals is error of constitutional magnitude as it compromises the presumption of innocence. United States v. Shwayder, 312 F.3d 1109, 1121 (9th Cir. 2002). In Shwayder, this Circuit stated:

> Following almost every other circuit that has addressed the question, we now hold that the use of guilt assuming hypotheticals undermines the presumption of innocence and thus violates a defendant's right to due process. The prosecution's use of guilt-assuming hypothetical questions on cross-examination of [the defendant's] character witnesses therefore constituted error.

Id. There, the Ninth Circuit listed a plethora of authorities also concluding that asking these types of questions violate due process and the presumption of innocence. See id. (citing United States v. Guzman, 167 F.3d 1350, 1352 (11th Cir.1999) ("The government may not ... pose hypothetical questions that assume the guilt of the accused in the very case at bar."); United States v. Oshatz, 912 F.2d 534, 539 (2d Cir.1990) ("The jury might infer from the judge's permission to ask a guilt-based hypothetical question that the prosecutor has evidence of guilt beyond the evidence in the record."); United States v. McGuire, 744 F.2d 1197, 1204 (6th Cir.1984) ("It would be error to allow the prosecution to ask the character witness to assume defendant's guilt of the offenses for which he is then on trial."); United States v. Williams, 738 F.2d 172, 177 (7th Cir.1984) (Guilt-assuming hypotheticals "allow[ ] the prosecution to foist its theory of the case repeatedly on the jury and to force an unsuspecting witness to speculate on the effect of a possible conviction."); United States v. Candelaria-Gonzalez, 547 F.2d 291, 294 (5th Cir.1977) ("These hypothetical questions [strike] at the very heart of the presumption of innocence which is fundamental to Anglo-Saxon concepts of fair trial.").

In Candelaria-Gonzalez, the Fifth Circuit held the mere asking of these questions alone constituted reversible error, stating: "[w]e think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have no place in a criminal trial."

//

Id. This line of questioning entirely undermines the Court's instructions to the jury at the beginning of this case that an indictment is not evidence and is not supposed to change any jurors' mind in the absence of evidence proving the contents of the indictment beyond a reasonable doubt. This Court should preclude such questions as an *in limine* matter.

**XV.**

**THIS COURT SHOULD GRANT LEAVE TO FILE OTHER MOTIONS**

To the extent that there is outstanding discovery that the government has not yet produced or the interest of fairness or judicial economy otherwise require it, Mr. Orozco Aguirre requests leave to file further motions *in limine* as may be necessary.

**XVI.**

**CONCLUSION**

For the foregoing reasons, Mr. Orozco Aguirre respectfully requests that this Court grant these motions in limine, as well as these other motions for trial.

Respectfully submitted,

Dated: June 9, 2008

/s/ Steven F. Hubachek
**STEVEN F. HUBACHEK**
Federal Defenders of San Diego, Inc.
Attorneys for Defendant
Steven_Hubachek@fd.org