KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>VICTOR MANUEL OROZCO-AGUIRRE,<br><br>Defendant. | Criminal Case No. 08CR0644-LAB<br><br>Date: June 17, 2008<br>Time: 9:00 a.m.<br><br>THE UNITED STATES' TRIAL MEMORANDUM |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its trial memorandum.

# I

# STATEMENT OF CASE

## A. INDICTMENT

On March 5, 2008, a federal grand jury returned a one-count Indictment charging Defendant Victor Manuel Orozco-Aguirre ("Aguirre") with possession with intent to distribute, 139 kilograms (308.20 pounds) of marijuana, a Schedule I Controlled Substance: in violation of Title 21, United States Code, Section 841(a)(1).

On March 6, 2008, the Defendant was arraigned on the Indictment and entered a plea of not guilty. A motions hearing was held on April 14, 2008. On June 9, 2008, Aguirre filed his motions in limine. The motions in limine are scheduled to be heard on June 16, 2008 at 2:30 p.m.

**B. TRIAL STATUS**

Trial is scheduled for June 17, 2008 at 9:00 a.m., before the Honorable Larry A. Burns. The United States expects that its case-in-chief will last two days.

**C. STATUS OF COUNSEL**

Defendant is represented by appointed counsel, Steven Hubachek, Federal Defenders, Inc.

**D. CUSTODY STATUS**

Defendant is currently in custody.

**E. INTERPRETER**

The United States anticipates the need for an interpreter for one or more of its witnesses. The Defendant is a citizen of Mexico and will need a Spanish speaking interpreter.

**F. JURY WAIVER**

Defendant has not waived his right to a trial by jury.

**G. PRETRIAL MOTIONS**

On March 28, 2008, Aguirre filed his motions to: compel discovery, dismiss the indictment, reveal grand jury transcripts, suppress statements and evidence, and for leave to file further motions. The government filed its response and opposition to Defendant's pre-trial motions, along with its motion for reciprocal discovery, on April 7, 2008.

At the motions hearing held on April 14, 2008, the Court granted Defendant's motion to compel discovery and for leave to file further motions. The Court denied Defendant's motion to dismiss and to produce grand jury transcripts. The Court deferred ruling on Defendant's motion to suppress statements and evidence. The Court also granted the government's motion for reciprocal discovery.

On June 9, 2008, the Defendant filed his motions in limine. The United States filed its response and opposition to Aguirre's motions in limine on June 12, 2008.

The motions in limine hearing is scheduled for June 16, 2008 at 2:30 p.m.

**H. STIPULATIONS**

The United States and Defendant have not entered into any stipulations.

**I. DISCOVERY**

The United States has complied and will continue to comply with its discovery obligations. Defendant has not provided any reciprocal discovery.

**II**

**STATEMENT OF FACTS**

A. BACKGROUND

On February 20, 2008, a driver for the Santoyo Trucking Company located in Calexico, California, drove trailer #5802 from Mexicali, Mexico to Calexico, California. The trailer contained a shipment filled with empty beer bottles headed to a customer in Van Nuys, California. After crossing the trailer through the Calexico East Port of Entry, the driver parked the trailer at the Britton & Company loading dock. Britton & Company, located at the Mexport Business Center in Calexico, California, is a private company that is responsible for inspecting shipments of goods for customers for damage. Because the driver arrived at Britton & Company sometime after business hours, the sealed trailer was left the Britton & Company loading dock.

On February 21, 2008, at approximately 9:00 a.m., another driver from Santoyo Trucking Company, Miguel Angel Urquijo-Osuna, arrived at Britton & Company and opened the trailer and removed the metal security seal for the inspector. Urquijo-Osuna left the trailer with the inspector. The trailer was later inspected by Britton & Company employee, Juan Diaz. The inspection began around 10:00 am and lasted until approximately 3:00pm. The only items located inside the trailer were pallets of empty beer bottles and plastic shrink wrap. After his inspection, Diaz contacted Santoyo Trucking Company and told them that the trailer was ready for pick up. Diaz did not put a new seal on the door of the trailer.

At approximately, 3:00pm, Urquijo-Osuna, returned to pick up trailer #5802 for Santoyo Trucking Company. He placed a metal security safety seal on the trailer and drove trailer #5802 to a location north of Britton & Company and parked it on the street. Urquijo-Osuna left the trailer on the street and went back to Mexicali, Mexico to pick up another trailer. Urquijo-Osuna returned to pick up trailer #5802 at approximately 7:00pm. and drove it to a Calexico, California parking lot to be picked up later by Aguirre.

B. PRIMARY INSPECTION

On February 21, 2008, at approximately 11:30 p.m., United States Border Patrol Agent (BPA) Tim Delgado was performing his official duties as a canine officer at the pre-primary area of the Highway 86 Checkpoint. At that time, BPA Delgado observed a blue Freightliner tractor trailer with California license plate UP70041 approach the primary inspection area of the checkpoint. Aguirre was the sole occupant and driver of the vehicle.

BPA Delgado conducted a pre-primary inspection of the tractor trailer with his service issued canine. During this inspection, the canine alerted to the back of the trailer. BPA Dan Carney questioned Aguirre as to his citizenship. Aguirre told BPA Carney he was a Mexican citizen and presented a valid U.S. Visa. BPA Carney asked Aguirre to present his I-94 card, and Aguirre presented his bill of lading. BPA Carney noticed Aguirre's hands were shaking and he began fumbling with his wallet. BPA Carney requested and was granted permission to search the truck and the trailer. BPA Carney referred Aguirre and the tractor trailer to secondary inspection.

C. SECONDARY INSPECTION

At secondary inspection, as Aguirre exited the truck, BPA Maldonado questioned him regarding his cargo. Aguirre stated that he was carrying empty beer bottles. Agent Maldonado noticed the trailer had a seal on the door. Without being prompted, Aguirre immediately pulled off the metal seal to the door of the trailer with his fingers. The metal security seal would normally need to be removed with a tool. It appeared to Agent Maldonado that the seal had already been pulled off and then set back on the trailer to appear as if it had never been tampered with.

After opening the trailer, Agent Delgado observed two black duffle bags propped in the rear of the trailer along with a medium-size cardboard box and a white bundle sitting on top of the box. Aguirre immediately stated he didn't now how the objects got into the trailer. A search of the contents of the bags revealed 24 brick-like bundles. The bundles were wrapped in aluminum foil, packing tape, red jelly, laundry detergent, and cellophane. The bundles weighed a total of 139 kilograms (308.2 pounds).

The duffle bags were removed from the trailer and taken inside of the checkpoint for testing. Agent Delgado performed a test on one of the bundles which contained a green leafy substance. The substance tested positive for the properties of marijuana.

D. AGUIRRE'S POST-ARREST STATEMENTS

On February 22, 2008, at approximately 3:40 a.m., Drug Enforcement Administration (DEA) Special Agent Jeff Butler advised Aguirre of his rights, in the Spanish language, using a preprinted Miranda form. Aguirre acknowledged his rights and agreed to answer questions without the presence of an attorney. Aguirre stated among other things that:

> He crossed the truck from Mexico to Calexico, California. He drove to Oceanside, California and picked up an empty trailer and returned to Calexico, California. Santoyo Transport called him to drive bottles. He parked his truck, without the trailer, in Calexico, California and walked across the Calexico Port of Entry into Mexico. He briefly returned to his residence and walked back into the United States through the Calexico Port of Entry. He picked up the truck and trailer in Calexico, California and headed north towards Van Nuys, California. He did not inspect the seal on the trailer or complete his log book for the trip to Van Nuys, although he knew it was a requirement. He had no explanation for why the number on the metal security seal did not match the number on the bill of lading. It was odd that the metal security seal came off so easy. He did not know there was marijuana in the trailer.

The interview was terminated at approximately 4:00 a.m. Aguirre was transported to the Imperial County jail at approximately 4:45 a.m.

E. TECS RECORD CHECK

A TECS lane record check on the truck and trailer revealed several recent crossings through the Calexico, California Port of Entry.

## III
## APPLICABLE LAW

### A. 21 U.S.C. §§ 841(A)(1) (POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE )

The United States must prove beyond a reasonable doubt that:

a. Defendant knowingly possessed marijuana; and
b. Defendant possessed it with the intent to deliver it to another person.

9th Cir. Crim. Jury Instr. 9.13 (2006).

**1. "Possession" defined**

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of the marijuana to another person, with or without any financial interest in the transaction. Id.

Possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir. 1990). A defendant's mere

possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute; secret compartment within a vehicle used to conceal illegal substances can raise an inference of connection between a defendant and the substance).

**2. "Knowledge" defined**

Knowledge may be proved by reasonable inferences from the high wholesale value of the narcotics. See United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the value of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States"). It does not matter whether the defendant knew that the substance was marijuana. It is sufficient that the defendant knew it was some kind of prohibited drug.

**3. "With intent to deliver" defined**

The Government can prove the "intent to deliver" element based on the following: the large quantity, see Sanchez-Lopez, 879 F.2d at 555; the manner in which the controlled substances were packaged, see United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982)); and the high value of the marijuana. See Golden, 532 F.2d at 1247; United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of value of cocaine was relevant to proving the defendant's intent to distribute); United States v. Ramirez-Rodriguez, 552 F.2d 883.

**IV**

**WITNESS LIST**

The Government may call the following witnesses in its case in chief, but reserves the right to call fewer or more witnesses, as necessary:

1. United States Border Patrol Agent Timmy Delgado
2. United States Border Patrol Agent Dan Carney
3. United States Border Patrol Agent Samuel Maldonado,

4. DEA Special Agent Jeff Butler
5. DEA Special Agent Barbara Hopkins (Value Expert)
6. DEA Special Agent Joanne Camacho
7. DEA Chemist
8. John Rinisen, Britton & Company
9. Juan Diaz, Britton & Company
10. Jaime Adolfo Meza-Zazueta, Santoyo Trucking
11. Pedro Guiterrez, Santoyo Trucking
12. Miguel Angel Urqujo-Osuna, Santoyo Trucking

## V

## PROPOSED JURY INSTRUCTIONS

The Government will provide a copy of its jury instructions to the Court and defense counsel under separate cover.

## VI

## STIPULATIONS

No stipulations have been entered into by the parties at this time.

## VII

## EXHIBIT LIST

The Government may seek to introduce the following exhibits in its case in chief, but reserves the right to present additional exhibits, as necessary:

1. Photographs of Tractor Trailer
2. Certified DMV Records of Tractor Trailer
3. Bill of Ladings
4. Metal Seals
5. Photos of Marijuana Seized from Tractor Trailer
6. Drug Value Chart
7. Santoyo Trucking Company Document
8. Photo of Highway 86 Checkpoint

## IX

## PROPOSED VOIR DIRE

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in illegal drug issues?
6. Does anyone believe that the illegal drug laws are too harsh?
7. Does anyone believe the use of marijuana should be legalized?
8. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
9. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?
10. Does anyone think that, regardless of the strength of the evidence, they will have trouble deciding whether the Defendant is guilty or not guilty?
11. Does anyone think they cannot decide the guilt or innocence of the person on trial here today?
12. Does anyone have religious or moral beliefs which will make it difficult for them to serve as a juror in this case?

DATED: June 12, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/Randy K. Jones

RANDY K. JONES
Assistant U.S. Attorney

KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5684; (619) 557-7381
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VICTOR MANUEL OROZCO-AGUIRRE,<br>Defendant. | ) | Case No. 08CR0644-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Trial Memorandum on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Steven F. Hubachek E-mail: Steven_Hubachek@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2008

s/ Randy K. Jones
RANDY K. JONES